**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSHUA MANUEL COLON,** | : | **CIVIL ACTION** |
| Petitioner, | : | |
| | : | |
| v. | : | **No. 12-5524** |
| | : | |
| **BRIAN COLEMAN, ET AL.,** | : | |
| Respondents. | : | |

**REPORT AND RECOMMENDATION**

**LYNNE A. SITARSKI**                                                    **September 13, 2013**
**UNITED STATES MAGISTRATE JUDGE**

Joshua Manuel Colon ("Colon") filed a *pro se* Petition for Writ of Habeas Corpus

pursuant to 28 U.S.C. § 2254.  Colon asserts three claims challenging his conviction in the Berks

County Court of Common Pleas for first degree murder, aggravated assault, possessing

instruments of crime, making terroristic threats, recklessly endangering another person, and

conspiracy to commit first degree murder.  Respondent has filed a Response to the Petition, and

Colon has filed a Reply.  For the reasons that follow, I respectfully recommend that the Petition

be dismissed without an evidentiary hearing and with no certificate of appealability issued.

**I.      FACTS AND PROCEDURAL HISTORY**[1]

The Pennsylvania Court of Common Pleas gave the following recitation of the facts

underlying this case:

---

[1]  This Court requested the state court record, which was received on December 17, 2012. Respondent has appended to his Response the relevant portions of the state court record.  Unless otherwise indicated, I cite to the state court record by the pagination contained in Respondent's Appendix.

On May 7, 2005, Defendant attended a party at Kira Acevedo's residence on the 500 block of South 12th Street in Reading, Berks County, Pennsylvania. When police arrived in response to a noise complaint, Defendant hid a handgun in the upstairs closet of a child's bedroom. After police left, Defendant went back to the bedroom to retrieve his gun but discovered it was not where he had left it. Defendant then became extremely angry, believing that Ramon Colon, the brother of fifteen-year-old Tiffany Colon (the "Victim"), and Elizer Carisquillo had stolen the gun from its hiding place.[2] Defendant believed these two stole the gun because they were the only people present upstairs at that time, other than himself and Sandra Rodriquez. Before leaving the residence, Defendant exclaimed that if he didn't 'get his f*****' gun, [he's] shooting somebody.

During the evening hours of May 8, 2005, Jennifer Colon was siting outside of her house on Maple street in Reading with her sister, the Victim. Defendant and John Cole approached the girls, and Cole asked for Mr. Carisquillo, at which time Jennifer reached Carisquillo on her cell phone. Cole spoke with Carisquillo on Jennifer's cell phone and then returned it to her. Cole then told Jennifer and the Victim that if he "don't get his gun back in two days," that he was "gonna come back, take out family, friends, and whoever else wanted is going down." Defendant nodded his head while Cole was saying this. Defendant and Cole then each brandished two (2) handguns and displayed them to Jennifer and the Victim.

On the evening of May 10, 2005, the Victim and her other sister, Natasha Colon, were walking up Maple Street when Natasha observed a person in a white tee shirt, standing in the road toward the top of the street, point his arm down the hill in their precise direction. Natasha quickly pushed the Victim behind a parked vehicle while she ran to the opposite side of the street. While taking cover, Natasha heard six (6) gunshots coming from the top of the hill. Natasha then came out of hiding and saw two (2) men running away at the top of the hill and started screaming for her sister.

Christopher Green was standing outside of his home, downhill from the Colon sisters' location, when he heard shots fire and saw muzzle flashes from up the hill. One of the shots hit a railing that was about two (2) feet from Mr. Green. When he

_____

[2] Ramon Colon, Jennifer Colon, Natasha Colon, and the Victim, Tiffany Colon, are not related to Defendant Joshua Colon.

looked up the hill he saw a car's headlights round the corner at the top of the hill and illuminate a man in a white tee shirt standing in the middle of the road. As Mr. Green ran up the hill in the direction of the gunshots, he saw the Victim run down the hill and cross the street on the side where Joy Doberstein lived. As she crossed the street, Mr. Green saw her spin around and scream 'they are not firecrackers they are gunshots!' Mr. Green then saw the Victim go in to Ms. Doberstein's house. Mr. Green observed only two (2) people at the top of Maple Street before he followed the Victim into the Doberstein house.

Ms. Doberstein was inside her home, downhill from the Colon sisters and uphill from Mr. Green when she heard gunfire. She opened her front door to investigate but was pushed back inside by a neighbor. Shortly thereafter, the Victim came into Ms. Doberstein's house and stated that she had been shot. The Victim ultimately died of the gunshot would she suffered to her chest.

Tanya Endy was returning from class to her home at the top of Maple Street when she saw Defendant and John Cole jogging up the hill, away from the shooting. Ms. Endy first observed Defendant and Cole in the center of the street, but then observed them cross over to the sidewalk closest to her driver's side. At their closest, Defendant and Cole were two (2) feet from Ms. Endy. Ms. Endy subsequently identified the two people she saw as the Defendant and John Cole from a proper photo lineup. Ms. Endy further noted that there was no one else near the pair at that location during that time.

(A. 451-453.)

On September 29, 2006, a jury trial began in the Berks County Court of Common Pleas. (A. 36.) Colon was found guilty of first degree murder, aggravated assault, possessing instruments of crime, making terroristic threats, recklessly endangering another person, and conspiracy to commit first degree murder.[3] (A. 30.) The jury was unable to reach a unanimous

---

[3] The Commonwealth withdrew Count 5- aggravated assault, Count 10- conspiracy to commit homicide, Count 12- conspiracy to commit murder of the third degree, and Count 13- conspiracy to commit aggravated assault. (A. 94.) There was no verdict for Count 1- criminal homicide, Count 3- third degree murder and Count 3(a)- involuntary manslaughter. (A. 30.) Count 6- persons not to possess firearms was severed. (*Id.*)

decision regarding imposition of the death penalty. (A. 33.) Thus, on October 31, 2006, the trial court sentenced Colon to a term of life in prison for the first degree murder conviction. (A. 301(a).) He was also sentenced to a consecutive term of fifteen (15) to forty (40) years for conspiracy to commit first degree murder charge, and concurrent terms of one (1) to five (5) years for possessing instruments of crime-weapon, one (1) to five (5) years for making terroristic threats, and one (1) to two (2) years for recklessly endangering another person. (A. 301(b).)

A timely post-sentence motion was filed on November 13, 2006. (A. 301(b).) The motion was denied on February 20, 2007. (A. 34.) A notice of appeal was filed on March 22, 2007, and Colon was directed to file a statement pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). (A. 210; A. 301(b).) On April 5, 2007, he filed a Rule 1925(b) statement raising the following issues for appeal:

(1)    trial court error in denying a defense request for a continuance to allow a co-conspirator's case to proceed to trial first so that he could be called as a witness for Petitioner;

(2)    the evidence was insufficient as matter of law to establish his guilt beyond a reasonable doubt; and

(3)    trial court error in denying a new trial based upon the failure of the Commonwealth to provide complete discovery.

On February 11, 2008, the Pennsylvania Superior Court affirmed the judgment of sentence. (A. 329-31.) Colon did not file a Petition for Allowance of Appeal to the Pennsylvania Supreme Court. (Pet. Br. at 8.)

On February 6, 2009, Colon filed a *pro se* petition for relief under the Post Conviction Relief Act, 42 Pa. C.S.A. § 9541, et. seq. ("PCRA"). (A. 332-88.) Counsel was appointed and filed an amended PCRA petition on October 13, 2010. (A. 389-406.) In his amended PCRA

petition, Colon raised the following issues:

(1)     Was counsel ineffective where he failed to properly authenticate the US Department of Justice treatise on Eyewitness Evidence in accordance with Pa.R.E.901 and the use [of] the treatise during cross examination to undermine the reliability of the procedure used to gain a positive eyewitness identification of Joshua Colon?

(2)     Was trial counsel ineffective where he offered unreasonable advice to Defendant not to testify, thereby depriving him of his right to testify on his own behalf?

(3)     Was trial counsel constitutionally ineffective for failing to object to the introduction of Luis Vasquez's murder confession to Kim Nagle as impeachment evidence only where the testimony could have been used as substantive evidence of 3rd party guilt thereby denying Appellant Due Process of Law and as guaranteed by the 14th Amendment to the US Constitution?

(A. 393.)  An evidentiary hearing was held on January 7, 2011.  (A. 412-47.)  On February 18,

2011, Colon's PCRA petition was denied.  (A. 448.)

On February 28, 2011, Colon filed an appeal with the Pennsylvania Superior Court.  (A.

449.)  In his Rule 1925(b) statement, Colon listed the following issues for appeal:

(1)     Did the PCRA court err in denying the Defendant relief given that trial counsel admitted that he failed to investigate completely the criminal background of the only eyewitness and thus failed to discover her multiple *crimen falsi* convictions?

(2)     Did the PCRA court err in denying the Defendant relief given that trial counsel failed to impeach the only eyewitness with evidence of her *crimen falsi* convictions and given that he had no reasonable strategic basis for not so impeaching her violation of *Commonwealth v. Baxter*, 640 A.2d 1271 (Pa. 1994)?

(3)     Did the PCRA court err in denying the Defendant relief given that the Assistant District Attorney misled the jury into believing that the witness at trial had a criminal conviction for "unauthorized use of a motor vehicle" (N.T. 10/3/2006 p. 119) when she in fact had no such conviction for that minor offense but had convictions for the more serious offenses of receiving stolen property (CP-06-CR-0002341-2000) and identity theft

(CP-06-CR-000022-2003) and violation of the Pharmacy Act (CP-06-CR-
000022-2003)?

(A. 450.)  Colon repeated all of the Rule 1925(b) issues in his appellate brief to the Superior

Court.  (A. 468.)  On December 27, 2011, the Superior Court affirmed the dismissal of the PCRA

petition.  (A. 528-37.)  He then filed a Petition for Allowance of Appeal with the Pennsylvania

Supreme Court on January 25, 2012, which was denied on August 28, 2012.  (A. 538-81; A.

583.)

On or about September 27, 2012, Colon filed the instant *pro se* Petition for Writ of

Habeas Corpus pursuant to 28 U.S.C. § 2254, asserting the following grounds for relief:

(1)     the Commonwealth violated *Brady v. Maryland*, 373 U.S. 83 (1963), and
        the trial court erred in refusing to order a new trial based on the *Brady*
        violation, which deprived him of his rights to Confrontation Clause of the
        Fifth Amendment and the Due Process Clause of the Fourteenth
        Amendment;

(2)     trial counsel was constitutionally ineffective for failing to investigate and
        uncover Tanya Endy's prior *crimen falsi* convictions; and

(3)     PCRA counsel was ineffective for failing to raise a claim that trial counsel
        was ineffective for failing to object to the trial court's limitation on the use
        of Luis Vazquez's murder confession as impeachment evidence only.

(Pet. at ¶ 12; Pet. Br. at 5.)  On December 21, 2012, Respondents filed a response.  (Doc. No. 5.)

On January 10, 2013, Colon filed a Reply.  (Doc. No. 7.)


## II.     STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") grants to persons

in state or federal custody the right to file a petition in a federal court seeking the issuance of a

writ of habeas corpus.  *See* 28 U.S.C. § 2254.  Generally, a habeas corpus petition shall not be

granted unless the petitioner has exhausted all remedies available in the courts of the state, there is an absence of available state corrective process, or circumstances exist that render such process ineffective to protect petitioner's rights. 28 U.S.C. § 2254(b)(1).

AEDPA increased the deference federal courts must give to the factual findings and legal determinations of the state courts. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002); *Wertz v. Vaughn*, 228 F.3d 178, 196 (3d Cir. 2000) (citing *Dickerson v. Vaughn*, 90 F.3d 87, 90 (3d Cir. 1996)). Pursuant to 28 U.S.C. § 2254(d), as amended by AEDPA, a petition for habeas corpus may only be granted if: (1) the state court's adjudication of the claim resulted in a decision contrary to, or involved an unreasonable application of, "clearly established Federal law, as determined by the Supreme Court of the United States;" or if (2) the adjudication resulted in a decision that was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). Factual issues determined by a state court are presumed to be correct, and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence. *Wertz*, 228 F.3d at 196.

The Supreme Court expounded upon this language in *Williams v. Taylor*, 529 U.S. 362 (2000). In *Williams*, the Court explained that "[u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Hameen v. Delaware*, 212 F.3d 226, 235 (3d Cir. 2000) (citing *Williams*, 529 U.S. at 389-390). The Court in *Williams* further stated that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's

decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

The "unreasonable application" inquiry requires the habeas court to "ask whether the state court's application of clearly established federal law was objectively unreasonable." *Hameen*, 212 F.3d at 235 (citing *Williams*, 529 U.S. at 388-389). "In further delineating the 'unreasonable application of' component, the Supreme Court stressed that an unreasonable application of federal law is different from an incorrect application of such law and a federal habeas court may not grant relief unless that court determines that a state court's incorrect or erroneous application of clearly established federal law was also unreasonable." *Wertz*, 228 F.3d at 196 (citing *Williams*, 529 U.S. at 389).

## III.    DISCUSSION

### A.    Claim 1: Violation of *Brady v. Maryland*

Colon claims that the Commonwealth violated *Brady v. Maryland,* 373 U.S. 83 (1963) when it withheld Tanya Endy's criminal record relating to Ms. Endy's two prior *crimen falsi* convictions before she testified at trial, and thus, the jury was not made aware of Ms. Endy's entire criminal record.[4]  (Pet. Br. at 10-11.)

---

[4]  Colon also asserts that the Commonwealth violated Rule 573(B)(1) of the Pennsylvania Rules of Criminal Procedure because it did not disclose the information relating to Endy's two convictions, even though this information was in control of the Commonwealth.  Rule 573(B)(1) sets forth the obligations of the Commonwealth for pre-trial discovery and investigation.  The Commonwealth is required to produce "[a]ny evidence favorable to the accused that is material either to guilt or to punishment, and is within the possession or control of the attorney for the Commonwealth . . ."  Pa. R. Crim. P. 573(B)(1)(a).  However, it is not a violation of Rule 573(B)(1) when the Commonwealth "fails to provide the defense with evidence that it does not possess and of which it is unaware, . . ."  *See Commonwealth v. Burke,* 781 A.2d 1136, 1142 (Pa. 2001) (citations omitted).

With respect to Colon's claim that the Commonwealth violated Rule 573(B)(1)(a), a

The United States Supreme Court has determined that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland,* 373 U.S. at 87. A *Brady* violation refers to "any breach of the broad obligation to disclose [material] exculpatory evidence," which the Supreme Court has interpreted to mean the "nondisclosure [of the evidence] was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Strickler v. Greene,* 527 U.S. 263, 281 (1999). The question of materiality hinges upon "whether 'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id.* at 290. To establish a *Brady* violation, a defendant must demonstrate that: (1) the evidence at issue is favorable to the accused because it is either exculpatory or impeaching; (2) the evidence at issue was suppressed by the State, "either willfully or inadvertently"; and (3) prejudice ensued from the suppression of the evidence at issue. *Id.* at 281-82.

On direct appeal, the trial court denied Petitioner's claim because of a failure to establish

---

federal habeas court is bound by state court determinations of state law and has no authority to review such determinations. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); *Warren v. Kyler*, 422 F.3d 132, 137 (3d Cir. 2005) (state court determinations of state law issues are not properly before federal court on habeas review). Colon's challenge of the trial court's and Superior Court's interpretation and application of Pennsylvania Rule 573(B)(1)(a) is not appropriate for habeas review. Accordingly, Colon's habeas claim, to the extent that it asserts a violation of Rule 573(B)(1)(a), is not a cognizable ground for habeas relief..

that the evidence was suppressed.[5]  Specifically, the trial court found as fact that the

Commonwealth had disclosed that Ms. Endy had been convicted of one *crimen falsi* offense and

was charged with a Pharmacy Act violation, although they did not disclose the disposition of that

charge because they were unaware of it.  (A. 301(i)-(j).)  Because trial counsel was put on notice

that Ms. Endy had been charged with a Pharmacy Act violation, the Commonwealth did not

commit a *Brady* violation for failing to disclose the disposition because defendant could have

discovered this information with reasonable diligence.[6]  *Id.*  I conclude that the state court's

finding that the Commonwealth did not commit a *Brady* violation was not an unreasonable

application of *Brady*.  It is well-settled that "the prosecution bears the burden of disclosing to the

defense a prosecution witness's criminal record, whether or not an explicit request has been

---

[5]  The trial court's opinion was adopted by the Pennsylvania Superior Court without any
further analysis.  (A. 329-331).

[6]  At the post-sentence hearing, the ADA advised the court that Ms. Endy's criminal
record "was made available to [trial counsel] before trial."  (A. 217.)  He noted that the "rap
sheet" showed a Pharmacy Act violation, but did not indicate that Ms. Endy "was ever charged
with pharmacy fraud or false identification or identity theft."  (*Id.*)  Trial counsel then informed
the court that the Commonwealth does not provide copies of "rap sheets" to the defense, but the
defense is permitted to view them.  (*Id.* at 218.)  The ADA responded that "we're not allowed to
turn them over, like make copies of them, under the Criminal History Record Information Act,
but they were made available for inspection the whole time, including trial."  (*Id.*)  Upon the
conclusion of the post-sentence hearing, Ms. Endy's criminal history record was marked for
identification as Defendant's Exhibit No. 5.  (*Id.*)  The Exhibit indicated that Ms. Endy, a.k.a.
Tanya Rodriquez, was arrested on December 16, 2002, in connection with a Pharmacy Act
violation, but the disposition was unreported.  (*Id.* at 301.)
    In its Rule 1925(b) opinion, the trial court held that the "Defendant was notified of the
Pharmacy Act violation and could have obtained this information simply by looking on the
Fourth Floor of the Berks County Courthouse in the Clerk of Courts office."  (A. 301(k).)  The
trial court determined that the Defendant "could have subsequently used [the information
pertaining to the Pharmacy Act violation] to cross-examine Ms. Endy, but he strategically chose
not to do so."  (*Id.*)  The court concluded that "no violation took place in this instance that would
merit a new trial."  (*Id.*)

-10-

made by defense counsel." *Wilson v. Beard*, 589 F.3d 651, 663 (3d Cir. 2009). In *Wilson*, the

Third Circuit granted habeas relief when the Commonwealth had evidence that a key witness had

been convicted of a *crimen falsi* offense but did not disclose that the conviction to the defense.

*Wilson*, 589 F.3d 651. Indeed, the Commonwealth represented that the witness did not have any

criminal record. 589 F.3d at 651.

In the instant case, unlike in *Wilson*, the Commonwealth did disclose the criminal record

information they had for Ms. Endy, which showed that Ms. Endy had been convicted of one

*crimen falsi* offense (unauthorized use of a motor vehicle), and also had been charged with a

violation of the Pharmacy Act.[7] The criminal history information in the possession of the

Commonwealth did not show the disposition of the Pharmacy Act charges. However, the

disposition of the Pharmacy Act violation was a public record and thus equally available to both

sides. The Commonwealth's failure to further investigate the violation to determine the

disposition of the offense and then inform defense counsel of such was not a *Brady* violation.

*See Dukes v. Pappas*, 405 Fed. Appx. 666, 669 (3d Cir. 2010) ("*Brady* does not require the

government to facilitate the compilation of exculpatory material that, with some industry,

defense counsel could marshal on their own.") (internal quotations and citations omitted).

Indeed, "the government is not obliged under *Brady* to furnish a defendant with information

which he already has or, with any reasonable diligence, he could obtain himself." *United States*

---

[7] Ms. Endy's *crimen falsi* conviction for unauthorized use of a motor vehicle was disclosed to defense counsel. At trial, defense counsel cross-examined Ms. Endy on this conviction and she testified "I had driven a car that actually belonged to a boyfriend, and he had called and said that I took it without permission because we had gotten into an argument. (A. 65). Ms. Endy also admitted that she pled guilty to the unauthorized use of a motor vehicle charge. *Id.*

*v. Starusko*, 729 F.2d 256, 262 (3d Cir. 1984) (internal quotations omitted).

Here, the disposition of the charge was unknown to both sides and was a public record that both sides could attain by checking with the Berks County Clerk's office. *Gov't of the V.I. v. Gumbs*, 426 Fed. Appx. 90 (3d Cir. 2011) (finding government didn't violate Brady by failing to turn over records that were equally available to the defendant and the government); *but see Wilson*, *supra*.

Given this factual predicate, which Colon does not attempt to refute with clear and convincing evidence, I conclude that the trial court's finding that there was no *Brady* violation was not an unreasonable application of *Brady's* suppression prong.[8] Accordingly, I recommend dismissing Claim 1 as meritless.

### B.     Claim 2:  Ineffective Assistance of Trial Counsel

Petitioner next claims that his trial counsel was ineffective for failing to investigate and impeach Ms. Endy with her prior *crimen falsi* convictions.  (Pet. Br. at 12-16.)  He contends that while trial counsel filed a motion for discovery and was notified of Ms. Endy's charge for a Pharmacy Act violation, counsel "elected not to look into the matter further."  (*Id.* at 12-13.)  He asserts that counsel made an uninformed strategic decision not to cross-examine and impeach Ms. Endy with her prior *crimen falsi* convictions, and this strategy was unreasonable since Ms. Endy's "truthfulness became the central issue for the jury to determine."  (*Id.* at 13-14.)  Colon contends he was prejudiced by trial counsel's failure to investigate and uncover Ms. Endy's

---

[8] As noted *supra*, trial counsel did impeach Ms. Endy with her unauthorized use conviction and the jury was aware she had a criminal record that included at least one *crimen falsi* conviction.  *See Hollman v. Wilson*, 158 F.3d 177, 180-82 (3d Cir. 1998) (finding no Brady violation for failure to disclose prior *crimen falsi* convictions when witness was impeached at trial with other convictions and jury was aware he had a criminal record)

*crimen falsi* convictions because "it substantially handicapped his [] ability to impeach the testimony of the only witness to place him at the crime scene." (*Id.* at 16.)

Colon's ineffective assistance of counsel claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the United States Supreme Court set forth the standard for a petitioner seeking habeas relief on the grounds of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687. Because "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable," a court must be "highly deferential" to counsel's performance and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. *Strickland's* prejudice prong asks "whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." *Id.* at 695; *see also Harrington v. Richter*,___U.S.___, 131 S. Ct. 770, 791-92 (2011) (citation omitted). The "[l]ikelihood of a different result must be substantial, not just conceivable." *Harrington*, 131 S. Ct. at 792 (citations omitted).

As to the "contrary to" clause, the PCRA Court addressed Claim B using the Pennsylvania courts' three-pronged test for deciding ineffective assistance of counsel claims.

*See Commonwealth v. Khan,* CP-4136-2008 at 1 (Mont. Ct. Cm. Pl. Apr. 14, 2010). This three-part test requires the petitioner to establish the following: (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for their action; and (3) the petitioner was prejudiced by the ineffectiveness. *See Commonwealth v. Rios*, 920 A.2d 790, 799 (Pa. 2007). The Third Circuit has held that the Pennsylvania ineffectiveness test is not contrary to the Supreme Court's *Strickland* standard. *See Werts,* 228 F.3d at 204. Thus, the application of the Pennsylvania three-pronged test was not "contrary to clearly established federal law." This Court will analyze Claim 2 to see if the state courts "unreasonably applied" the clearly established *Strickland* standard.[9]

As the Supreme Court has stated, establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is no easy task. *Premo v. Moore,* ___U.S. ___, 131 S. Ct. 733, 739-40 (2011). Because the *Strickland* standard and § 2254 are "both highly deferential, . . . when the two apply in tandem, review is 'doubly' so." *Id.* at 740 (citations omitted). On habeas review, the court should not ask whether counsel's actions were reasonable. *Id.* Rather, the habeas court should ask whether there is any reasonable basis to support the conclusion that counsel satisfied *Strickland*'s deferential standard. *Id.*

Counsel's failure to investigate potential witnesses can amount to ineffective assistance of counsel. *United States v. Gray*, 878 F.2d 702 (3d Cir. 1989). This principle is derived from

---

[9] The Supreme Court has instructed that the "contrary to" and "unreasonable application" clauses in 28 U.S.C. § 2254(d)(1) should be viewed independently. *See Williams v. Taylor*, 529 U.S. 362, 404-05 (2000). As noted above, the Pennsylvania test is not "contrary to" the *Strickland* standard. *See Werts,* 228 F.3d at 204. Thus, unless specifically noted, each claim has satisfied the "contrary to" clause and the Court will proceed by analyzing each claim's compliance with the "unreasonable application" clause.

the *Strickland* mandate that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. However, "trial counsel is not bound by an inflexible constitutional command to interview every possible witness. Instead, counsel [is] simply required to exercise reasonable professional judgment in deciding whether to interview [a witness]." *Lewis v. Mazurkiewicz*, 915 F.2d 106, 113 (3d Cir. 1990). Importantly, informed strategic decisions of counsel are presumed to be reasonable. *See Strickland*, 466 U.S. at 690-91.

The PCRA court concluded that trial counsel "performed a thorough and competent investigation into Ms. Endy's background at the time of trial." (A. 457). The PCRA Court also found no prejudice from the failure to investigate and impeach Ms. Endy with the convictions because: (1) trial counsel thoroughly cross-examined Ms. Endy using an informed strategy; and (2) there was overwhelming evidence of guilt. (A. 498-499). On PCRA appeal, the Superior Court affirmed the PCRA court's conclusion. (A. 535-36.)

I conclude that the state courts' determination regarding trial counsel's strategy was not an unreasonable application of *Strickland*. Claims that counsel failed to adequately cross-examine a witness require an analysis to determine whether the alleged deficiency was part of a "reasonable trial strategy." *Berryman v. Morton*, 100 F.3d 1089, 1098 (3d Cir. 1996) Trial counsel testified that his overall strategy was to attack the accuracy of Ms. Endy's account of the incident.[10] (A. 417). Counsel knew that she had at least one prior conviction, and testified at the

_____

[10] At the PCRA hearing, trial counsel testified that his strategy on cross-examination of Ms. Endy was as follows:

> [we] were not attacking Ms Endy as someone who was an
> intentional liar, our attack upon her was that she didn't see

-15-

PCRA hearing that even if he had known of the other convictions, it would not have changed his overall strategy. *Id.* Trial counsel's strategy was a reasonable strategic decision. Even if his decision wasn't fully informed because counsel was unaware of Ms. Endy's other convictions, Petitioner cannot show that counsel's proffered strategy could never be considered sound.[11] *See Thomas v. Varner*, 428 F.3d 491, 499 (3d Cir. 2005).

Moreover, Petitioner cannot show that if his trial counsel had presented additional evidence of Ms. Endy's other convictions, that there was a "reasonable probability" that the outcome would have been different. *Strickland*, 466 U.S. at 694. Indeed, the jury was made aware of Ms. Endy's one prior *crimen falsi* conviction and knew she had a criminal record. *See Harvey v. Folino*, No. 10-1799, 2012 U.S. Dist. LEXIS 140244, at *16 (E.D. Pa. ) (Davis, J.) (No prejudice from counsel's decision not to introduce evidence of victim's propensities because it was cumulative). Furthermore, Petitioner has failed identify a motive or reason that Ms. Endy would have had for lying. *See United States v. Herron*, No. 85-0052-02, 1985 U.S. Dist. LEXIS 15028, at *3 (E.D. Pa. Oct. 11, 1985) (to impeach a witness effectively a defendant has to establish a current motive for the witness to lie under oath). Finally, there was overwhelming evidence of guilt; Petitioner had threatened to "shoot up the block" prior to the shooting,

---

                     what she said she saw, it happened too quick, and that she
                     could not have seen what she saw.

(A. 417).

[11] Although counsel testified that he would have asked Ms. Endy about the convictions, he maintained that his overall strategy of attacking her ability to observe the incident would have remained the same. (A. 416). Therefore, although a more thorough investigation may have allowed counsel to ask questions regarding the conviction, the thrust of his cross-examination would have remained the same. Accordingly, Petitioner cannot show a reasonable probability that but for counsel's failure to fully investigate Ms. Endy's criminal background, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694.

numerous witnesses identified the shooter as matching Petitioner's description, and Ms. Endy provided eyewitness testimony, from which she never wavered.  *See* (A. 425).  Given the evidence, and the fact that trial counsel had impeached Ms. Endy on both her criminal conviction for unlawful use and ability to accurately observe the incident, the state courts finding that Petitioner could not establish prejudice was a reasonable application of *Strickland*.  Therefore, I recommend denying habeas relief arising out of Claim 2.

## C.     Claim 3: Ineffective Assistance of Trial and PCRA Counsel

In Claim 3, Colon argues that trial counsel was "constitutionally ineffective for failing to object to the introduction of Luis Vasquez's murder confession to Kim Nagle as impeachment evidence only, where the testimony could have been used as substantive evidence of third party guilt."[12]  (A. 393.)

### 1.     Exhaustion and Procedural Default

 "A district court ordinarily cannot grant a petition for a writ of habeas corpus arising from a petitioner's custody under a state court judgment unless the petitioner first has exhausted his available remedies in state court."  *Houck v. Stickman*, 625 F.3d 88, 93 (3d Cir. 2010) (*citing* 28 U.S.C. § 2254(b)).  Under 28 U.S.C. § 2254(c), a petitioner will not be deemed to have

---

[12]  Petitioner also claims that PCRA counsel was ineffective for abandoning the claim. However, it is well settled that "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."  28 U.S.C. § 2254(i).  Thus, I will construe Petitioner's arguments regarding his PCRA counsel's ineffectiveness as an argument for cause to excuse the procedural default of his underlying trial counsel ineffectiveness claim.  *See Martinez*, 132 S. Ct. At 1320. ("although 2254(i) precludes a Petitioner from "relying on the ineffectiveness of his postconviction attorney as a 'ground for relief,' it does not stop [a Petitioner] from using it to establish cause" to excuse a procedural default) (citations omitted).  This argument is considered below.  *Infra* at P. 19.

exhausted available state remedies if he had the right under state law to raise, by any available procedure, the question presented. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 847-48 (1999) ("[W]e ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies, *i.e.*, whether he has fairly presented his claims to the state courts."). In order for a claim to be exhausted, "'[b]oth the legal theory and facts underpinning the federal claim must have been presented to the state courts, and the same method of legal analysis must be available to the state court as will be employed in the federal court.'" *Tome v. Stickman,* 167 Fed. Appx. 320, 322-23 (3d Cir. 2006) (*quoting Evans v. Court of Common Pleas, De. County, Pa.*, 959 F.2d 1227, 1231 (3d Cir. 1992)). A state prisoner must "fairly present" his federal claims to the state courts before seeking federal habeas relief by invoking "one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845. In Pennsylvania, one complete round includes presenting the federal claim through the Superior Court on direct or collateral review. *See Lambert v. Blackwell*, 387 F.3d 210, 233-34 (3d Cir. 2004) (holding that petitioners are not required to seek review by the Supreme Court of Pennsylvania in order to exhaust claims).

Here, Colon's PCRA counsel included Claim 3 in an Amended PCRA petition filed on October 13, 2010. (A. 390-406.) Although this issue was the subject of testimony at the PCRA hearing, PCRA counsel did not include the issue in the subsequent Rule 1925(b) statement of matters complained of on appeal. Thus, Claim 3 was not exhausted because Petitioner failed to argue it through the Superior Court. *Lambert*, 387 F.3d 210.

Exhaustion is required before seeking federal habeas review, but a federal court may excuse the exhaustion requirement if it would be futile for the petitioner to seek relief in the state

court system. *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981); *Toulson v. Beyer*, 987 F.2d 984, 986 (3d Cir. 1993) (*quoting Gibson v. Scheidemantel*, 805 F.2d 135, 138 (3d Cir. 1986)); 28 U.S.C. § 2254(b)(1)(B)(i)-(ii). The PCRA is the sole means for obtaining collateral relief from convictions in Pennsylvania; thus, exhaustion is deemed futile if the PCRA's statute of limitations has expired. *See Lines v. Larkins*, 208 F.3d 153, 164 n.17 (3d Cir. 2000); *see also* 42 Pa. Cons. Stat. § 9542. Here, this Court recommends that exhaustion be excused because any subsequent PCRA petition would be deemed untimely.[13]

Although this Court recommends that exhaustion be excused, Petitioner is considered to have procedurally defaulted these claims because state procedural rules bar him from seeking further relief in state courts. *See Keller v. Larkins*, 251 F.3d 408, 415 (3d Cir. 2001). Thus, Petitioner has procedurally defaulted Claim 3, and habeas review is denied unless it is excused, an issue which will be addressed below.

## 2. Exceptions to Procedural Default

---

[13] Pursuant to the PCRA, collateral actions must be filed within one year of the date the conviction at issue becomes final. 42 Pa. Cons. Stat. § 9545(b)(1). A judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of Pennsylvania and the Supreme Court of the United States, or at the expiration of time for seeking such review. 42 Pa. Cons. Stat. § 9545(b)(3). The PCRA statute of limitations is not tolled while a PCRA petition is pending. *See* 42 Pa. Cons. Stat. § 9545(b)(1) ("Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final.").

Here, Petitioner's judgment became final when direct review concluded on March 12, 2008, thirty days after the Pennsylvania Superior Court affirmed Petitioner's judgment of sentence. *See Heleva v. Brooks*, 581 F.3d 187, 193 (3d Cir. 2009) (petitioner has thirty days after Pennsylvania Superior Court denial to seek review by the Pennsylvania Supreme Court). Accordingly, Petitioner had until March 12, 2009 to file any subsequent PCRA petition. He timely filed a PCRA petition on February 6, 2009. *See* Pet'r's *Pro Se* PCRA Pet. Under 42 Pa. Cons. Stat. § 9545(b)(1), the PCRA statute of limitations was not tolled during the pendency of his PCRA petition in the state courts. Thus, due to the state PCRA statute of limitations, he became barred from filing any new PCRA petition or PCRA claims on March 12, 2009.

The Court may excuse Petitioner's procedural default and consider his claim on the merits only if Petitioner can show: (a) cause for the default and actual prejudice as a result of the alleged violation of federal law; or (b) a fundamental miscarriage of justice if the claim is not considered. *Coleman*, 501 U.S. at 750; *see also Martinez v. Ryan*, __ U.S.__, 132 S. Ct. 1309, 1316 (2012). To establish cause for a procedural default, Petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 479 (1986). To establish actual prejudice, Petitioner must "show 'not merely that the errors at...trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Id.* at 494 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). Here, Petitioner argues that ineffectiveness of PCRA counsel constitutes cause to excuse his procedural default.

In *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), the United States Supreme Court recognized a "narrow exception" to the general rule that attorney errors in collateral proceedings do not establish cause to excuse a procedural default. *Id.* at 1315. This exception applies only to claims of ineffective assistance at trial which would otherwise be defaulted due to attorney ineffectiveness in an "initial-review collateral proceeding," i.e., a collateral proceeding "which provide[s] the first occasion to raise a claim of ineffective assistance at trial." *Id.* In addition, "[t]o overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say the prisoner must demonstrate that the claim has some merit." *Id.* at 1318. The Supreme Court was careful to point out that its holding in *Martinez* "does not concern attorney errors in other kinds of

proceedings, *including appeals from initial-review collateral proceedings*. . . . *Id.* at 1320 (emphasis added). Because the attorney error that allegedly caused the procedural default was the failure to argue Claim 3 on <u>appeal</u>, it does not fall within the *Martinez* exception.

Accordingly, I conclude that Claim 3 is procedurally defaulted, and thus recommend that Petitioner's request for habeas relief arising out this claim be denied.

## IV. CONCLUSION

For all the foregoing reasons, I respectfully recommend that the petition for writ of habeas corpus be **DISMISSED** without an evidentiary hearing and with no certificate of appealability granted.

Therefore, I respectfully make the following:

# R E C O M M E N D A T I O N

AND NOW, this __13th__ day of September, 2013, IT IS RESPECTFULLY

RECOMMENDED that the petition for writ of habeas corpus be DISMISSED without an

evidentiary hearing and with no certificate of appealability issued.

Petitioner may file objections to this Report and Recommendation.  *See* Local Civ. Rule

72.1.  Failure to file timely objections may constitute a waiver of any appellate rights.

BY THE COURT:


 /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
UNITED STATES MAGISTRATE JUDGE